# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM ANTHONY HUMMONS      Case No. 1:10-cv-221
     Plaintiff                         Dlott, J.
                                       Litkovitz, M.J.

     vs

HAMILTON COUNTY SHERIFF'S,      **REPORT AND**
OFFICE, et al.,                      **RECOMMENDATION**
     Defendants

Plaintiff William Anthony Hummons, proceeding pro se, brings this action against defendants John Doe and Hamilton County Deputy Sheriff Howard Hochscheid. (Doc. 3).[1] Plaintiff asserts that defendants violated his civil rights by subjecting him to an unlawful seizure based on racial profiling and then making a false report to cover up the discriminatory conduct. Plaintiff seeks general damages in the amount of $50,000.00 and punitive damages. This matter is now before the Court on defendant Hochscheid's motion for summary judgment (Doc. 12), to which plaintiff has not responded.

## I. Facts

This case arises out of plaintiff's encounter with Hamilton County Sheriff's Deputies on April 8, 2008. On that date, shortly after 10:00 p.m., the dispatcher for the Hamilton County Sheriff's Department received a citizen's report that a suspicious vehicle with two to three male occupants had been parked in the lot of the Heritage Hill apartment complex for over an hour.

---

[1] Plaintiff's claims against defendant Hamilton County Sheriff's Department were sua sponte dismissed by the Court on the initial screening of plaintiff's *in forma pauperis* complaint. (Doc. 4).

(Doc. 12, Greg Wenz Aff., Ex. 2; Carol Tonges Aff., Ex. 1). Officer Adam Kroeger,[2] a Hamilton County Deputy Sheriff, responded to the call. (Doc. 12, Kroeger Aff., ¶ 4). After locating the vehicle, Deputy Kroeger asked the occupants if they would show some identification so that he could check the computer records on each individual. (*Id.*). One of the occupants of the vehicle was plaintiff, an African-American male. (*Id.*). According to plaintiff, the other occupant was an African-American male friend of plaintiff's who lived at the apartment complex, and the vehicle was owned by a third individual by the name of Stephanie Brown. (Doc. 3 at 3).[3] Plaintiff states that he and his friend were exiting the vehicle as Deputy Kroeger arrived. (*Id.*). Plaintiff states his friend offered to show Deputy Kroeger his identification to show he lived at the apartment complex. (*Id.*). Plaintiff states that as he was about to enter the building, Deputy Kroeger called plaintiff over to produce identification. (*Id.*). When asked "what was wrong," Deputy Kroeger advised plaintiff and his friend about the dispatched call. (*Id.*). After checking plaintiff's identification, Deputy Kroeger discovered that plaintiff had five outstanding traffic warrants for his arrest. (Kroeger Aff., ¶ 4). Although the Sheriff's policy is to re-cite individuals with three or fewer traffic warrants because of overcrowding at the Hamilton County Justice Center, Deputy Kroeger was required to obtain a supervisor's permission to re-cite an individual with more than three warrants. (*Id.*, ¶ 6). Consistent with this policy, Deputy Kroeger contacted his supervisor

_____

[2]It appears that defendant John Doe is Deputy Kroeger. Service has been executed on "defendant John Doe," but this defendant has not been identified by plaintiff in any subsequent pleadings, nor has Deputy Kroeger been served with process in this matter. (Doc. 15). Even assuming John Doe is Deputy Kroeger and that Deputy Kroeger was properly served with process, Deputy Kroeger would be entitled to summary judgment as a matter of law because the evidence does not support a violation of plaintiff's constitutional rights for the reasons discussed in the body of this Report and Recommendation.

[3]Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

2

to determine if he was required to arrest plaintiff on the warrants.  (*Id.*, ¶ 7).  Deputy Kroeger was required to arrest plaintiff, and he did so.  (*Id.*, ¶ 8).

Because Deputy Kroeger was ending his shift when he arrested plaintiff, he arranged to meet Deputy Hochscheid so that Deputy Hochscheid, who was beginning his shift, could transport plaintiff to the Justice Center.  (*Id.*, ¶ 9; Hochscheid Aff., ¶ 3).  Deputy Hochscheid was advised that Deputy Kroeger had investigated a suspicious vehicle at 8314 Wooster and had arrested plaintiff on the outstanding warrants. (Hochscheid Aff., ¶ 3).  Deputy Hochscheid met Deputy Kroeger at a local gas station, where plaintiff was transferred to Deputy Hochscheid's custody and transported to the Justice Center.  (*Id.*, ¶¶ 4, 5).  When Deputy Hochscheid filled out the paperwork for plaintiff to be admitted to the Justice Center, he mistakenly wrote on the form that plaintiff had been arrested because it was discovered during a "T/S" (traffic stop) that he had five outstanding warrants, when in fact plaintiff had not been stopped pursuant to a traffic stop. (*Id.*, ¶ 6, Ex. 8).  The next day, plaintiff was brought before a judge and the warrants were recalled either because a new bond was set or because the charges were dismissed. (Patterson Aff., Exs. 3, 4, 5).

Defendant Hochscheid argues that plaintiff is unable to prove a violation of his constitutional rights based on the undisputed facts.  First, defendant Hochscheid contends that plaintiff cannot establish that racial profiling was the reason Deputy Kroeger initially approached him because Deputy Kroeger was responding to a citizen's race-neutral report when he first encountered plaintiff, and Deputy Kroeger did not know plaintiff's race when he was dispatched to the scene.  Second, defendant Hochscheid asserts that the valid warrants outstanding at the time of plaintiff's arrest provided probable cause for the arrest.  Third, defendant Hochscheid

3

argues that because Deputy Kroeger did not violate plaintiff's constitutional rights by approaching and arresting plaintiff based on a non-racially motivated citizen complaint and valid outstanding warrants, it follows that defendant Hochscheid did not violate plaintiff's rights by "covering up" Deputy Kroeger's actions. To the contrary, Deputy Hochscheid avers that the "T/S" entry he made in the paperwork was simply a mistake. Defendant Hochscheid contends that for these reasons, he is entitled to qualified immunity from liability for damages on plaintiff's claims that he violated plaintiff's civil rights.

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

4

However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 323-24. The moving party need not support his motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex*, 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The Court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### III. Qualified Immunity Standard

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two-pronged test: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the

5

injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818 (2009).

## IV.  Plaintiff's 42 U.S.C. § 1983 Claims

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . ."  To establish a claim under § 1983, plaintiff must prove that "(1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right."  *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

Liberally construed, plaintiff's complaint alleges the following violations of plaintiff's federal constitutional rights:  (1) Plaintiff was subjected to an unreasonable seizure in violation of the Fourth Amendment; and (2) plaintiff was subjected to racially discriminatory targeting by law enforcement officials, commonly known as "racial profiling," in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment.  *See High v. Fuchs*, 74 F. App'x 499, 502-503 (6th Cir. 2003).  For the reasons set forth below, the Court finds that summary judgment should be granted in favor of defendant Hochscheid on both claims.

### 1.  Defendant Hochscheid should be granted qualified immunity on plaintiff's Fourth Amendment Claim.

The Fourth Amendment protects the rights of individuals to be free from unreasonable searches and seizures.  *Terry v. Ohio*, 392 U.S. 1, 9 (1968).  There are three types of encounters between citizens and police which potentially implicate Fourth Amendment concerns: "consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary

6

detention, or *Terry* stop, which must be predicated upon reasonable suspicion; and arrests which must be based on probable cause." *United States v. Campbell*, 486 F.3d 949, 953-54 (6th Cir. 2007) (quoting *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994) (quotation marks omitted)).

A consensual encounter takes place when the police approach an individual in a public place and pose some questions to him or ask for identification, so long as the individual remains free to leave. *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983))[4]. *See also U.S. v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004); *United States v. Drayton*, 536 U.S. 194, 201 (2002) (citing *Florida v. Bostick*, 501 U.S. 429, 435 (1991)). A seizure does not occur under such circumstances if "a reasonable person would feel free to terminate the encounter." *Id.* (citing *Bostick*, 501 U.S. at 435). Because a consensual encounter does not constitute a seizure, a police officer does not need reasonable suspicion or probable cause before approaching an individual to make an inquiry. *Campbell*, 486 F.3d at 954 (citing *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004)) (finding consensual encounter, and not a Fourth Amendment seizure, where

---

[4] As the Supreme Court in *Royer* explained:

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. If there is no detention-no seizure within the meaning of the Fourth Amendment-then no constitutional rights have been infringed.

460 U.S. at 497.

police officers approached defendant in airport because they suspected her of drug trafficking and a reasonable person under defendant's circumstances would have felt free to leave).

In contrast, a Fourth Amendment seizure occurs when, under the totality of the circumstances, a reasonable person would have believed that he was not free to walk away from the encounter with a police officer. *Campbell*, 486 F.3d at 954 (citing *Alston*, 375 F.3d at 411). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 n. 6 (1980). When an encounter with a police officer advances to the point of a "seizure," the officer must have reasonable suspicion of criminal activity to warrant a *Terry* stop, or probable cause to justify an arrest to comport with the Fourth Amendment. *Campbell*, 486 F.3d at 954.

For purposes of a *Terry* stop, police need only a "reasonable suspicion of criminal activity" to conduct a brief investigatory detention. *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000) (citing *Terry v. Ohio,* 392 U.S. 347, 357 (1967)). An investigatory stop does not violate the Fourth Amendment if the officer had a "reasonable suspicion to believe criminal activity 'may be afoot.'" *United States v. Lugman*, 522 F.3d 613, 616 (6th Cir. 2008) (quoting *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The Court looks to the totality of the circumstances to determine whether the officer had a "particularized and objective basis" to suspect criminal activity may be occurring. *Id.* (citing *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007)).

8

An arrest must be supported by probable cause. *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000) (citing *Dunaway v. New York*, 442 U.S. 200, 212-14 (1979)).  To establish a wrongful arrest claim under § 1983, the plaintiff must prove that the officer lacked probable cause. *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003).  The issue of "probable cause" turns on whether the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Mich. v. DeFillippo,* 443 U.S. 31, 37 (1979) (citations omitted).  *See also Feathers*, 319 F.3d at 851; *Radvansky v. City of Olmstead Falls,* 395 F.3d 291, 305 (6th Cir. 2005) (quoting *Gardenhire*, 205 F.3d at 318) ("A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime.").

"[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004) (citing *Whren v. United States*, 517 U.S. 806, 812-813 (1996); *Arkansas v. Sullivan*, 532 U.S. 769 (2001)).  In other words, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id*.  It is only necessary that the circumstances, viewed objectively, justify the action. *Id*. (citing *Whren*, 517 U.S. at 813) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)).  The fact that an individual is later acquitted of the crime for which he is arrested is irrelevant to the validity of the arrest. *DeFillippo,* 443 U.S. at 36.

Viewing the undisputed facts in the light most favorable to plaintiff, plaintiff fails to establish a genuine issue of fact as to whether Deputy Hochscheid was involved in any unlawful

9

seizure of plaintiff in violation of the Fourth Amendment. Plaintiff does not allege that Deputy Hochscheid had any involvement in the initial encounter with the deputy sheriff in the apartment complex parking lot or in the decision to approach and question plaintiff. Nor is there any evidence that Deputy Hochscheid was involved in the decision to arrest plaintiff on the outstanding warrants so as to support a Fourth Amendment unlawful seizure claim against Deputy Hochscheid. Therefore, Deputy Hochscheid is entitled to summary judgment on plaintiff's Fourth Amendment claim on this basis alone.

Even if Deputy Hochscheid had been involved in the decision to question and arrest plaintiff, the evidence does not permit a finding that plaintiff was subjected to an unreasonable seizure in violation of his Fourth Amendment rights so as to subject Deputy Hochscheid to liability on this claim. The undisputed evidence before the Court shows that the initial encounter between plaintiff and Officer Kroeger was a consensual encounter and not a seizure within the meaning of the Fourth Amendment. First, there is no evidence that the initial encounter between Deputy Kroeger and plaintiff was not consensual. According to the communications log and the computer-generated communications report which are part of the case record, the Sheriff's Department had received a report of a "suspicious vehicle" occupied by two to three males which had been sitting in the Heritage Hill apartment complex parking lot for over an hour. (Doc. 12, Wenz Aff., Ex. 2; Tonges Aff., Ex. 1). Plaintiff states that as Deputy Kroeger approached, plaintiff and his friend were exiting the vehicle. Plaintiff states his friend approached Deputy Kroeger and offered to show his identification to show he lived at the apartment complex. When Deputy Kroeger asked plaintiff for identification so that he could check their names in the computer records, plaintiff complied. (Doc. 3 at 3). There is no evidence that Deputy Kroeger

10

induced plaintiff's cooperation "by coercive means" or that a reasonable person would not have felt free to terminate the encounter. *See Drayton*, 536 U.S. at 201. There is no evidence that Deputy Kroeger drew his weapon, activated his emergency lights or siren, blocked plaintiff's exit, or engaged in any other activity or action which would compel a reasonable person to believe he was not free to leave or terminate the encounter. Thus, the evidence does not support a finding that a seizure occurred prior to plaintiff's arrest so as to implicate Fourth Amendment concerns.

Second, when plaintiff was ultimately "seized" by virtue of his arrest, the arrest was valid under the Fourth Amendment as it was supported by probable cause. Plaintiff's five outstanding traffic warrants which Deputy Kroeger discovered upon checking the computer records provided probable cause for plaintiff's arrest. (*See* Kroeger Aff., ¶ 5; Patterson Aff., Exhs. 3, 4, 5). Even assuming one of the five warrants was invalid or was found to be a mistake as alleged in the complaint, this fact does not negate the existence of probable cause. *Cf. DeFillippo,* 443 U.S. at 36. There is no evidence or allegation that Deputy Kroeger had any reason to suspect that the warrant was invalid, and plaintiff does not allege that the remaining four warrants were invalid. Thus, the evidence does not support a claim that plaintiff was subjected to an unlawful arrest in violation of his Fourth Amendment rights.

In sum, there is no evidence that Deputy Hochscheid was involved in the decision to question and arrest plaintiff and no evidence that the initial encounter was anything but consensual. In addition, probable cause supported plaintiff's arrest based on the outstanding warrants against him. Therefore, Deputy Hochscheid's conduct did not violate plaintiff's Fourth

11

Amendment rights. Accordingly, defendant Hochscheid should be granted qualified immunity from liability for damages on plaintiff's Fourth Amendment claim.

**2. Defendant Hochscheid should be granted qualified immunity from damages on plaintiff's Fourteenth Amendment Claim.**

It is well established that "the Fourteenth Amendment protects citizens from police action . . . based solely on impermissible racial considerations." *United States v. Avery*, 137 F.3d 343, 353 (6th Cir. 1997). This protection extends to racial profiling. *See High*, 74 F. App'x at 502-503. The protection from constitutionally unequal treatment afforded by the Equal Protection Clause of the Fourteenth Amendment exists independently of the Fourth Amendment's protection against unreasonable searches and seizures. *See Cunningham v. Sisk*, 136 F. App'x 771, 774 (6th Cir. 2005). Thus, the existence of probable cause for an arrest does not necessarily dispose of an Equal Protection claim which alleges racial profiling. *Id.* (citing *Avery*, 137 F.3d at 352).

A claim of racial profiling is appropriately analyzed under a three-part test which has been formulated in the context of a claim of selective prosecution. *Cf. Cunningham,* 136 F. App'x at 775 (citing *U.S. v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)). The plaintiff must show that (1) the officer singled out a person belonging to an identifiable group even though the officer has decided not to take action against individuals not belonging to that group in similar situations; (2) the officer took action against the individual with a discriminatory purpose; (3) the action must have had a discriminatory effect on the group to which the individual belongs. *Id.* (citing *Anderson*, 923 F.2d at 453).

The evidence in this case is not sufficient to satisfy the three-part test for an Equal Protection violation based on racial profiling by either Deputy Kroeger or Deputy Hochscheid.

12

The record contains no evidence indicating that when responding to similar calls involving non-African-Americans, Deputy Kroeger has decided not to investigate the situation, including by not asking for identification. Nor is there any evidence that Deputy Kroeger has elected not to follow department policy by failing to seek permission to re-cite non-African-Americans who have more than three warrants. (*See* Kroeger Aff., ¶¶ 6, 7). Moreover, there is no evidence that Deputy Kroeger acted with a discriminatory purpose when he either initiated the encounter with plaintiff or arrested plaintiff. Plaintiff's race is not reflected in the dispatch or Sheriff's Department communications, so there is nothing to indicate that Deputy Kroeger was aware of plaintiff's race when he arrived at the apartment complex. Thus, there is no evidence that racial profiling occurred in this case.

Because there is no evidence that Deputy Kroeger engaged in racial profiling, a jury could not reasonably infer that Deputy Hochscheid falsified paperwork to cover up such discriminatory conduct. Plaintiff does not allege that Officer Hochscheid engaged in any other discriminatory conduct. Defendant Hochscheid should therefore be granted qualified immunity from liability for damages on plaintiff's Fourteenth Amendment claim.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Hochscheid's motion for summary judgment be **GRANTED** and plaintiff's complaint against both defendants Hochscheid and John Doe be dismissed with prejudice.

2. The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800,

13

803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.,* 105 F.3d 274, 277

(6th Cir. 1997).


Date: 3/22/2011

Karen L. Litkovitz
Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WILLIAM ANTHONY HUMMONS,          Case No. 1:10-cv-221
     Plaintiff                          Dlott, J.
                                        Litkovitz, M.J.

     vs

HAMILTON COUNTY SHERIFF'S,
OFFICE, et al.,
     Defendants

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14)  DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☒ Agent ☐ Addressee<br>B. Received by (*Printed Name*)    C. Date of Delivery |
| 1. Article Addressed to:<br><br>William Anthony Hummons<br>184 Sturgis Avenue<br>Cinti, OH 45217 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)   ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7002 3150 0000 8389 1207 |

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

1: 10 cv 221 (Doc. 17)